IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:10-CV-42-FL

| | | |
|---|---|---|
| LESLIE YUENGEL, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings

pursuant to FED. R. CIV. P. 12(c). Claimant Leslie Yuengel ("Claimant") filed this action pursuant

to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a

period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

payments. The time for filing responsive briefs has expired and the pending motions are ripe for

adjudication. Having carefully reviewed the administrative record and the motions and memoranda

submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the

Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final

decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 18

October 2006, alleging disability beginning 25 August 2006. (R. 10, 152-61). Both claims were

denied initially and upon reconsideration. (R. 80-84, 94-96, 103-05). A hearing before the

Administrative Law Judge ("ALJ") was held on 10 June 2009 at which Claimant was represented

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:10-CV-42-FL

| | |
|---|---|
| LESLIE YUENGEL,<br><br>       Plaintiff/Claimant,<br><br>       v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND
RECOMMENDATION**

This matter is before the court on the parties' cross motions for judgment on the pleadings

pursuant to FED. R. CIV. P. 12(c). Claimant Leslie Yuengel ("Claimant") filed this action pursuant

to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a

period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

payments. The time for filing responsive briefs has expired and the pending motions are ripe for

adjudication. Having carefully reviewed the administrative record and the motions and memoranda

submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the

Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final

decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 18

October 2006, alleging disability beginning 25 August 2006. (R. 10, 152-61). Both claims were

denied initially and upon reconsideration. (R. 80-84, 94-96, 103-05). A hearing before the

Administrative Law Judge ("ALJ") was held on 10 June 2009 at which Claimant was represented

by counsel and a witness and a vocational expert ("VE") appeared and testified. (R. 25-58). On 21 August 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 7-24). On 9 March 2010, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently
> working; and (2) must have a "severe" impairment that (3) meets or exceeds [in
> severity] the "listings" of specified impairments, or is otherwise incapacitating to the
> extent that the claimant does not possess the residual functional capacity to (4)
> perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails

at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of

the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other

work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of

functional limitation resulting from a claimant's mental impairment(s): activities of daily living;

social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§

404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written decision

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2);

416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of a

nurse practitioner's opinion; (2) improper evaluation of treating source opinions; (3) improper

assessment of Claimant's credibility; and (4) improper assessment of Claimant's residual functional

3

capacity ("RFC"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 3. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in

substantial gainful employment. (R. 12). Next, the ALJ determined Claimant had the following

severe impairments: lumbago, cervicalgia, morbid obesity, anxiety, depression and disorder of

written expression. *Id.* However, at step three, the ALJ concluded these impairments were not

severe enough, either individually or in combination, to meet or medically equal one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged

mental impairment and applying the technique prescribed by the regulations, the ALJ found that

Claimant had mild restriction in activities of daily living, moderate difficulties in maintaining social

functioning and a concentration, persistence or pace and has experienced no episodes of

decompensation. (R. 13).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

ability to perform light work[1] allowing her to alter position every two hours and that involves simple,

routine and repetitive tasks, does not require good reading skill and requires only occasional contact

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

with the general public. (R.15). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 17). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a graphic arts designer and press operator. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 23).

## II.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was forty-five years old, unemployed and residing with her mother. (R. 29, 31). Claimant is a high school graduate and was enrolled in both regular and special education courses. (R. 30). Claimant reads at a fifth grade level, is capable of basic mathematics, making change, writing a check and balancing a checkbook. (R. 30, 31). Claimant attended vocational rehabilitation training for the handicapped in graphic arts. (R. 30). Claimant was last employed in 2003 as a printing press operator. (R. 32).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. These medical conditions include deteriorated discs in her neck and back, arthritis in her left knee and ankle, fibromyalgia, dyslexia, carpal tunnel syndrome, Raynaud's disease, pain in her neck, arms, shoulder and back, pinched nerves in her back, depression, panic attacks and anxiety. (R. 33-34, 37-40). Claimant takes numerous medications for these conditions, including skelaxin, neurontin, diazepam, trazodone, nebuterol, omeprazole and valium. (R. 35-36).

Claimant testified that she can walk, stand and sit for 15 minutes. (R. 38). Claimant cannot lift with her left hand and is only capable of lifting light items with her right hand, such as a cup of coffee. (R. 39-40). Claimant cannot lift a gallon of milk. (R. 38). Claimant can climb stairs and

5

stoop but cannot squat. (R. 39). Claimant stated while she can bend, it is difficult to return upright due to back pain which radiates down her legs. (R. 45). Claimant has difficulty grasping small items due to numbness in her fingers and cannot touch cold items due to Raynaud's disease. (R. 40).

Claimant understands verbal commands but has difficulty comprehending written ones. (R. 34). Claimant testified that when reading a newspaper, she tends to skip many words and as such, fails to fully comprehend what she reads. (R. 45). Claimant has a drivers license but does not drive due to medication side effects. (R. 39). Claimant performs no housework with the exception of making her bed. (R. 40-41). Claimant does not socialize and only leaves the house for medical appointments and, on occasion, to shop for groceries. (R. 39, 41). Claimant testified that both her neurologist and psychiatrist have advised her not to work. (R. 45).

## III.    Gerladine Yuengel's Testimony at the Administrative Hearing

Gerladine Yuengel ("Yuengel"), Claimant's mother, testified at the administrative hearing. (R. 46-50). Yuengel testified that Claimant has always resided with her. (R. 47). Yuengel stated Claimant spends the majority of the day watching TV while resting in a recliner "with her head on a brace-like thing." (R. 48). Yuengel testified that Claimant rarely leaves the house since doing so requires descending stairs, which Claimant has fallen down a few times. (R. 48). Yuengal stated Claimant is very depressed, cries often and complains about pain in her neck, head, arms and back. (R. 47-49). Since Claimant stopped working, Yuengel has been responsible for all household chores. (R. 49). Yuengel explained Claimant cannot comprehend books beyond an eleven-year-old level and is incapable of writing a letter. (R. 49). Yuengel testified that Claimant has difficulty walking but had not noticed any limitations with respect to Claimant's ability to lift. (R. 50).

6

## IV. Vocational Expert's Testimony at the Administrative Hearing

Judy Skinner testified as a VE at the administrative hearing. (R. 50-58). The VE testified that Claimant's past work cannot be performed if an individual possesses poor reading skills. (R. 52). The VE testified further that an individual limited to light work, poor reading skills, the ability to alter her position every two hours and only occasional contact with the general public could perform work as a garment folder, a garment bagger and a production assembler. (R. 23, 52). The VE testified the same individual could perform these jobs if she needed to change position every hour. (R. 53). The VE testified further that the positions would not be available if the hypothetical individual experienced intrusive psychiatric impairments such as depression and crying spells or had difficulty handling the pressures associated with day-to-day activities. (R. 53-54).

## DISCUSSION

## I.     The ALJ did not err in evaluating the opinion of a nurse practitioner.

Claimant contends the ALJ should have accorded controlling weight to the opinion of Laura Pakowski ("Pakowski), a family nurse practitioner[2] with East Carolina Neurology. Claimant provides no discussion in support of her argument, citing only Social Security Ruling ("S.S.R.") 06-03p. Pl.'s Mem. at 14-15.

Pursuant to the regulations, a nurse is not considered an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Nonetheless, "evidence from other sources," such as nurse practitioners, may be used "to show the severity of [a claimant's] impairment(s) and how it affects [her] ability to"

---

[2] The ALJ's decision incorrectly identifies Pakowski as "Dr. Pakowski." (R. 18).

7

engage in work-related activities. *Id.* §§ 404.1513(d), 416.913(d) (including as "other sources" nurse practitioners, physicians' assistants, school teachers and social workers); *see also* S.S.R. 06-03p, 2006 SSR LEXIS 4, at *5 , 2006 WL 2329939, at *2 (explaining the opinions from "other [medical] sources . . . may provide insight into the severity of [a claimant's] impairment and how it affects [a claimant's] ability to function"). Since medical sources such as nurse practitioners "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians," their "[o]pinions . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 SSR LEXIS 5, at *8, 2006 WL 2329939, at *3. Indeed, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.*

In a letter dated 6 May 2008, Pakowski stated Claimant was disabled due to degenerative disc disease of the lumbar area, right arm pain, numbness and tingling in her hands and chronic depression. (R. 455). Pakowski stated further that Claimant suffers from poor sleep and has had poor response to physical therapy. *Id.* The ALJ concluded that Pakowski's opinion is "inconsistent with the record as a whole" and noted further that the opinion "seems to be based primarily on the claimant's subjective complaints." (R. 18). In reviewing treatment records, the ALJ noted the following inconsistencies with respect to Pakowski's statement that Claimant is unable to work due to numerous physical impairments: (1) Dr. Pakowski's 30 January 2008 progress note indicating Claimant had "normal [strength] throughout," normal tone, deep tendon reflexes and gait and had

8

denied steroid injections (R. 432); (2) an 8 February 2008 progress note[3] indicating Claimant had normal bulk and tone and 5/5 muscle strength in the bilateral upper and lower extremities and a normal gait (R. 430); (3) a 9 June 2008 progress report by Rowena B. Mariano, M.D., with East Carolina Neurology, noting Claimant denied any weakness in the upper or lower extremities, was not interested in trigger point injection procedures but would consider such injections to the cervical and lumbrosacral area as needed if pain increased, had normal muscle strength and gait but experienced tenderness on moderate to deep palpation along the lumbar paraspinal muscles and upper gluteal muscles (R. 551-52); (4) a 25 September 2008 progress note from ECU Physicians indicating Claimant had no complaints (R. 502); and (5) a 21 October 2008 progress note by Dr. Mariano indicating Claimant had normal muscle strength throughout, normal gait, no numbness or tingling and no radiation of pain down the extremities (R. 557).[4] (R. 18-19).

The ALJ discussed also the June 2009 examination of Claimant by Carey Miklavcic, D.O., a state agency physician, which revealed a normal gait and neurological exam as well as a range of motion "within relatively normal limits although back range of motion was minimally limited by pain." (R. 17, 561); *see* S.S.R. 96-6p, 1996 SSR LEXIS 3, at *5, 1996 WL 374180, at *1 (explaining findings by state agency medical personnel regarding the nature and severity of an individual's impairments cannot be ignored by the ALJ.). Based on the discrepancy between Pakowski's

---

[3] The ALJ incorrectly attributes the progress note of John W. Gibbs, III., M.D., Ph.D., also with East Carolina Neurology, to Pawkoski. (R. 18, 430).

[4] The ALJ does not explicitly discuss Pakowski's statement regarding the ineffectiveness of Claimant's physical therapy. However, the court notes that on 9 June 2008, Claimant advised Dr. Mariano that she did not believe physical therapy exercises helped but conceded that cervical traction partially alleviated her headaches. (R. 552). On 23 September 2008, however, Dr. Mariano noted that Claimant's primary physician had not approved physical therapy. (R. 553).

9

statement and her own records and those of physicians with East Carolina Neurology and ECU Physicians, including findings of normal muscle strength throughout, the ALJ properly concluded that Pakowski's statement as to the impact of Claimant's physical impairments on Claimant's ability to work was not fully credible. (R. 19).

As for Pakowski's statements concerning Claimant's depression, the ALJ acknowledged Claimant's treatment for depression from staff members with Tideland Mental Health Center ("Tideland") and Beaufort Mental Health Services. (R. 20). However, the implication of Pakowski's opinion that Claimant's depression is debilitating to the point of classifying Claimant as disabled is contradicted by the following records: (1) Pakowski's January 2008 treatment record describing Claimant as "a little depressed" and her affect as "a little flat" (R. 432); (2) a 25 September 2008 progress note indicating a history of depression but noting Claimant was had no complaints, no depressed mood and was in "good spirits" (R. 502, 504); (3) a 21 November 2008 follow-up report from ECU Physicians indicating Claimant was experiencing no depression, anxiety or agitation (R. 498); and (4) a 1 May 2009 report by Beaufort Mental Health Services indicating Claimant's insight and judgment were fair, cognition grossly intact, thought processes were logical and goal directed and noting that Claimant reported good sleep, normal appetite and denied new symptoms in terms of her psychiatric issues (R. 493). (R. 19-21).

The ALJ sufficiently explained his rationale regarding the weight accorded Pakowski's opinion and her explanations are supported by substantial evidence. Accordingly, this assignment of error is without merit.

**II.     The ALJ did not err in evaluating the opinion of Claimant's treating physicians.**

Claimant contends the ALJ should have accorded controlling weight to the opinions of

10

Claimant's treating sources, and in particular, Alexandr Zouev, M.D., staff psychiatrist with Beaufort Mental Health Services, Ronald Taska, M.D., with Tideland, and Scott Yager, M.D., Claimant's former physician from Brunswick, New Jersey. Pl.'s Mem. at 13-15. This court disagrees.

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However,"[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro*, 270 F.3d at 178 (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the

11

treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5.

A. Dr. Zouev

The first medical opinion at issue appeared in a letter dated 6 June 2008, wherein Dr. Zoev explained that due to the chronic nature of Claimant's mental and physical problems, as well as side effects from multiple medications, Claimant had been unable to work since 2003 and it was his opinion that Claimant would not be capable of maintaining full-time employment. (R. 454). The ALJ acknowledged Claimant's mental health treatment since 2007 from staff members with Beaufort Mental Health Services, including Dr. Zouev; however, the ALJ accorded "minimal weight" to Dr. Zouev's opinion, finding it inconsistent with the record as a whole. (R. 20-21). While noting statements concerning an individual's inability to work are reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5, 1996 WL 374183, at *2, the ALJ acknowledged such statements must nevertheless be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. (R. 20). Claimant provides minimal explanation as to how the record contradicts the ALJ's finding, arguing only that medical personnel with Beaufort Mental Health Services "had multiple opportunities to treat [Claimant] for her recurrent depression." Pl.'s Mem. at 14.

Upon review of Claimant's mental health treatment records, the court finds the ALJ finding is supported by substantial evidence. While treatment records indicate Claimant suffers from mental limitations, which the ALJ incorporated into the Claimant's RFC, they do not support Dr. Zouev's

12

opinion that Claimant is incapable of working. As the ALJ's decision indicates, review of Claimant's medical records indicate an improvement in Claimant's depressive symptoms. In June 2007, during her initial visit at Beaufort Mental Health Services, Claimant explained her year-long treatment with Tideland Mental Health Center for depression and symptoms associated therewith, including decreased sleep and excessive crying. (R. 390). Claimant also reported an improvement in sleep which she attributed to medication. *Id.* In a follow-up visit in July 2007, Claimant reported further improvement regarding her depression and a decrease in crying spells. (R. 392). Claimant reported also that medication had alleviated her pain somewhat. (R. 932). Claimant's mood was described as "more level," her affect was "full range," her speech more spontaneous and goal-directed and she smiled often. (R. 392). A January 2008 progress report described Claimant as only "a little depressed" and indicated her affect was only "a little flat." (R. 432). A 25 September 2008 progress report indicated Claimant had no complaints and no depressed mood. (R. 501-02). On 1 May 2009, Dr. Zouev noted that Claimant reported good sleep, normal appetite and that medication proved beneficial in controlling her anxiety. (R. 493).[5] While describing Claimant's mood as dysphoric with congruent affect, Dr. Zouev described Claimant's thought processes as logical and goal directed without flight of ideas or looseness of association and her insight and judgment as fair. (R. 493).

The court notes further that the record does not support Dr. Zouev's opinion that Claimant's alleged disability is attributed in part to medication side effects. Claimant provides no evidence refuting this statement and in fact provides no factual summary regarding medication side effects. Upon reviewing the extensive record, the court notes medication side effects complained of by

---

[5] A duplicate copy of the May 2009 progress note appears at page 495 of the administrative transcript.

Claimant appear on an infrequent basis. During an 11 December 2006 consultative examination, Claimant attributed concentration difficulties to her medication; however, the court found no further documentation of such complaints. (R. 571). On 30 January 2007, Claimant complained of nausea; however, Claimant reported no side effects on a follow-up visit 9 February 2007.[6] (R. 364-65). On 16 July 2007, Claimant reported experiencing "a lot of sedation" from her medication; however, on a follow-up visit 22 October 2007, Claimant had no complaints. (R. 392, 395). Claimant's report of "intermittent problems with her balance and occasional dizziness" appears only in a progress note dated 8 January 2008. (R. 433). While Claimant complained that her medication caused "some tiredness" during a 23 September 2008 visit and reported "fall[ing] alseep from medications at times" during her consultative evaluation on 10 July 2009, there is no indication that this side effect is disabling. (R. 553, 571).

In this case, the ALJ discussed his reasons for not accepting Dr. Zouev's opinions. The ALJ considered the 20 C.F.R. §§ 404.1527(d), 416.927(d) factors which ultimately convinced the ALJ to accord decreased weight to Dr. Zouev's opinion. In particular, the absence of a sufficient rationale for Dr. Zouev's medical opinions and the inconsistency between the opinion and treatment notes, including those of Dr. Zouev, reasonably downgraded the true evidentiary value of Dr. Zouev's opinions. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Zouev's opinion and the reasons for said weight. *See Sterling Smokeless Coal Co.,* 131 F.3d at 439-40; *see also Koonce v. Apfel,* 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An

---

[6] Duplicate copies of the January and February 2007 progress notes appear in pages 379 and 377, respectively, of the administrative transcript.

14

ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Zouev's opinion. *See Craig*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

B. Dr. Taska

The second medical opinion at issue appeared on a prescription paper dated 17 October 2006, wherein Dr. Taska with Tideland stated, "In my opinion, [Claimant] is not medically capable of working at this time." (R. 427). Dr. Taska provided no explanation of the evidence relied on in forming his opinion. The record indicates Claimant received treatment from Tideland staff members both prior and subsequent to her alleged disability onset date of 25 August 2006. During her initial assessment on 31 May 2006, it was noted that Claimant suffered from moderate recurrent depression and had a Global Assessment of Functioning ("GAF")[7] score of 41-50 (R. 319), which indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning." DSM-IV at 32 (bold typeface omitted). On 23 June 2006, Dr. Taska noted that Claimant's affect was appropriate, her stream of thought coherent and logical but her mood was down. (R. 329). On a follow-up visit 1 August 2006, Claimant reported doing well on her current medication and Dr. Taska described Claimant's affect as appropriate and her mood stable. (R. 327). On 19 September

---

[7] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), 32 (4th ed. 1994).

2006, Dr. Taska noted that Claimant "was doing reasonably well on her current medication regimen" and her affect was "appropriate;" however, Claimant experienced suicidal thoughts on occasion and expressed sadness regarding her prior Social Security disability claim.[8] On 17 October 2006, the same date as the medical opinion at issue, Dr. Taska noted Claimant was doing reasonably well on her current medication regimen, was not experiencing any medication side effects, had an "appropriate" affect and a "normal" mood and exhibited no signs of suicidal or homicidal ideation. (R. 322). Similar assessments were made during follow-up visits on 21 November 2006 and 30 January 2007, with the exception of describing Claimant's mood as "down." (R. 320, 365). On 9 February 2007, Dr. Taska described Claimant's mood as "normal" but found her affect "blunted." (R. 364). On 18 May 2007, Claimant reported doing much better and improvement in sleep. (R. 373). In June 2007, Claimant transferred her psychiatric care to Beaufort Mental Health Services as Tideland had closed. (R. 390).

In her decision, the ALJ did not mention Dr. Taska's name or his October 2006 opinion. The ALJ did acknowledge, however, that medical records from Tideland dated 20 January 2007 through 18 May 2007, which include two follow-up visits with Dr. Taska, reflect Claimant's continued treatment for moderate, recurrent major depressive disorder. (R. 13, 363-65, 372-80). Furthermore, as detailed above, the ALJ discussed Claimant's mental health records from staff members with Beaufort Mental Health Services through May 2009, including the opinion of Dr. Zouev. While the "ALJ is under no obligation to give a treating physician's legal conclusions any heightened evidentiary value," he is "not free, however, to simply ignore" such conclusions. *Morgan v.*

---

[8] Claimant first applied for DIB on 6 November 2003, which was denied initially and upon reconsideration. (R. 62). On 24 August 2006, an ALJ found Claimant not disabled and Claimant did not appeal this decision. (R. 60-70).

*Barnhart*, 142 Fed. Appx. 716, 722 (4th Cir. 2005) (unpublished disposition). Here, while failing

to acknowledge Dr. Taska's opinion that Claimant cannot work, the ALJ acknowledged an identical

conclusion made by Dr. Zouev. In addressing specifically the conclusion of Dr. Zouev, the ALJ

acknowledged her duty to consider this statement, properly considered mental health treatment

records from physicians with both Tideland, including Dr. Taska's records, and Beaufort Medical

Health Services, as well as state agency opinions, and fully explained her decision not to adopt Dr.

Zouev's opinion. Those same reasons for discounting Dr. Zouev's opinion are equally applicable to

the opinion of Dr. Taska, which does not refute the fact that substantial evidence exists supporting

the ALJ's determination that Claimant is capable of working and finding that medical opinions to

the contrary are entitled to minimal weight.[9] Accordingly, the court finds the ALJ's failure to

consider Dr. Taska's opinion harmless error.

C. Dr. Yager[10]

Finally, Claimant cites a medical opinion dated 1 March 2004 wherein Dr. Yager opined that

Claimant "is currently disabled secondary to cervical radiculopathy." (R. 266). Dr. Yager treated

Claimant for cervical radiculopathy and depression for several years, beginning in 2003. Pl.'s Mem.

---

[9] The court notes further the existence of a medical opinion dated 18 May 2007 from Kalavathi
Kolappa, M.D., also with Tideland, which appears on a prescription paper and states "[Claimant] is
a patient here & cannot handle a part time or full time job at this time." (R. 426). Like Dr. Taska,
Dr. Kolappa provided no explanation of the evidence relied on in forming his opinion. Claimant was
seen by Dr. Kolappa for follow-up visits on 20 March 2007, 20 April 2007 and 18 May 2007. (R.
372-74). Claimant does not discuss this opinion and does not fault the ALJ for failing to do so. As
Dr. Kolappa's opinion is identical to that expressed by Dr. Zouev, and it is evident the ALJ has
considered its underlying medical record, the court finds the ALJ's failure to consider this opinion
harmless error.

[10] Defendant incorrectly identifies Dr. Yager as Dr. Yates. *See* Mem. Supp. Comm'r's Mot. J.
Pleadings at 20 n.6. ("Def's Mem.").

17

at 4, 14; (R. 65-66). Providing no further argument, Claimant implies this treatment history alone requires according Dr. Yager's opinion controlling weight. Citing no authority, Defendant argues Dr. Yager's opinion is not germane to Claimant's present claim; thus, ALJ was under no requirement to consider this statement. Def's Mem. at 20 n.6. As Defendant points out, Claimant previously filed an application for DIB on 6 November 2003, in which she alleged a disability onset date of 26 March 2003. (R. 62). This prior claim, which included consideration of Dr. Yager's medical records between 2003 and 2006, was denied initially and upon reconsideration. (R. 62). On 24 August 2006, an ALJ found Claimant not disabled and Claimant did not appeal that decision. (R. 62).

Despite Defendant's statement to the contrary, evidence submitted in a prior proceeding "still might reinforce or illuminate or fill gaps in the evidence developed for the second proceeding." *Groves v. Apfel*, 148 F.3d 809, 810-811 (7th Cir. 1998). As the Seventh Circuit explained,

> although the final judgment denying [a prior] application was res judicata, this did not render evidence submitted in support of [that] application inadmissible to establish, though only in combination with later evidence [submitted with a current application], that [a claimant] had become disabled after the period covered by the first proceeding.

*Id.* at 810; *accord DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 414 (6th Cir. 2006) (explaining evidence "predating the onset of disability, when evaluated in combination with later evidence, may help establish disability [and this] is particularly true when the disabling condition is progressive"); *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) (holding medical reports predating disability period at issue "are nonetheless part of [the claimant's] case record, and should have been considered by the ALJ"); 42 U.S.C. § 423 (explaining the Commissioner "shall consider all evidence available in [an] individual's case record"). *But see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 687 (6th Cir. 1992) (holding the ALJ was not required to consider a medical

report from claimant's treating physician submitted along with claimant's earlier application for benefits); *Harris v. Astrue*, N. EDCV 09-00384 SS, 2009 U.S. Dist. LEXIS 99635, at *23-24, 2009 WL 3526570, at *8 (C.D. Cal. Oct. 26, 2009) (holding the ALJ did not err by failing to consider evidence predating the final decision regarding claimant's prior application for benefits).

An ALJ "is entitled to consider evidence from a prior denial for the limited purpose of reviewing the preliminary facts or cumulative medical history necessary to determine whether the claimant was disabled" without fear of this review amounting to a reconsideration on the merits and thereby constituting a de facto reopening of an earlier application. *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 193 (1st Cir. 1987). In this case, the ALJ did not acknowledge Claimant's prior benefits claim or medical history prior to 25 August 2006, Claimant's alleged onset date of disability. Assuming, *arguendo*, that this was error, it was harmless. Dr. Yager's 2004 opinion, which significantly predates Claimant's alleged onset date of disability, is inconsistent with the medical evidence of record for the relevant time period. As discussed above, the ALJ considered medical records documenting Claimant's treatment for back and neck pain and depression subsequent to her treatment with Dr. Yager and noted findings upon examination did not support a finding of disability.

## II.     The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ's credibility finding is not supported by substantial evidence. Pl.'s Mem. at 12.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other

symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96.

After reviewing the ALJ's decision, this court finds the ALJ made the necessary findings in support of her credibility determination and analysis of Claimant's complaints of pain pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ properly summarized Claimant's medical records as addressed in detail above.

Moreover, pursuant to S.S.R. 96-7p, the ALJ noted the following: (1) Claimant's daily activities, including the ability to perform self-care activities, grocery shopping on a monthly basis, watching TV and visiting family members; (2) Claimant's complaints of neck, shoulder and back pain, numbness in her fingers, arthritis in her left knee and ankle, concentration difficulties, nausea, sleep difficulties and frequent crying spells; (3) Claimant's testimony that her impairments limit her

20

ability to sit, walk or stand for more than 15 minutes at a time and make grasping objects difficult; (4) Claimant's use of numerous medications; and (5) Claimant's use of a recliner the majority of the day. (R. 16-22). The ALJ noted, however, that treatment records indicated Claimant's symptoms were either alleviated or controlled with medication and the record contained no documentation of hospitalizations since the alleged onset date of disability. (R. 21, 22). The ALJ noted also the lack of evidence supporting Claimant's alleged ongoing difficulties with medication side effects, Claimant's refusal of trigger point injections and the lack of significant treatment for pain. (R. 22). Finally, the ALJ noted Claimant's ability to understand verbal commands and perform basic mental tasks such as adding, subtracting, multiplying and dividing, making change and balancing a checkbook. (R. 21).

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, her decision that Claimant must alter her position every two hours, perform only simple, routine and repetitive tasks and have only occasional contact with the general public reflects the weight and credibility she afforded Claimant's subjective statements about her pain. The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's credibility

21

argument is without merit.

## III. The ALJ properly assessed Claimant's RFC.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. S.S.R. 96-8p, 1996 SSR LEXIS 5, at *1, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *14, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7.

The ALJ's decision indicates that she considered Claimant's mental and physical impairments in totality before determining Claimant maintained the RFC to perform light work. As described earlier, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence regarding her physical and mental impairments. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence).

Moreover, the ALJ considered the opinion evidence rendered by treating and non-treating

22

sources and state agency examining and non-examining consultants and explained her rationale for the weight accorded this evidence. With respect to treating source opinions, the ALJ noted that the these opinions are inconsistent with their own treatment notes and the record as a whole. The ALJ accorded significant weight, however, to the opinions of state agency consultants and her decision is supported by substantial evidence.

With respect to Claimant's physical impairments, the ALJ discussed a June 2009 report wherein Dr. Miklavcic, a state agency examining consultant, noted Claimant exhibited a normal gait, could bend and squat without difficulty, could rise from a sitting position without assistance, no muscle atrophy, 5/5 grip strength with adequate fine motor movements, dexterity and ability to grasp object bilaterally and a range of motion "within relatively normal limits although back range of motion was minimally limited by pain." (R. 17, 561). Similar findings were reported by Claimant's medical sources, including Pawkowski, Dr. Gibbs and Dr. Mariano (R. 18-19, 430, 432, 552, 557). Dr. Miklavcic concluded that Claimant is capable of light work without restrictions. (R. 561). The ALJ's RFC incorporates Dr. Miklavcic's light work finding; however, in light of Claimant's testimony regarding pain, the ALJ found Claimant must be allowed to alter position every two hours. (R. 22). The ALJ noted her finding that Claimant was capable of light work was also supported by the opinion of Jolene Jean-Garcia, M.D., a non-examining consultant. (R 18, 337-44).

Regarding Claimant's mental limitations, the ALJ discussed a January 2007 report wherein Arlene Cooke, Ph.D., a non-examining consultant, found that Claimant can understand and remember simple instructions, can carry out simple instructions and sustain concentration for moderate periods of time sufficient for simple, repetitive and routine tasks, has some difficulty interacting with others and is able to adapt to routine changes in a stable setting. (R. 19, 347). Dr.

23

Cooke's finding is in accordance with Ted Jamison, M.A., a state agency examining psychologist, who noted during his December 2006 examination that Claimant was able to understand the instructions for simple tasks that were presented and to sustain her attention. (R. 19, 334). Mr. Jamison noted further that Claimant reported no problems dealing with coworkers and supervisors in the past. (R. 20, 334). Findings upon examination by Claimant's medical sources, including her logical and goal-directed thought processes, clear speech with normal rate, tone, volume and latency, and fair insight and judgment, as well as Claimant's ability to perform basic mathematics, make change and balance a checkbook, support the state agency findings and the ALJ's adoption thereof.

The ALJ also acknowledged the July 2009 findings of Vincent Maginn, Ph.D., a state agency consulting psychologist, which indicated Claimant was functioning within the average range of intellectual abilities but suffered from significant learning problems which "delimit her abilities to work well with peers [and] coworkers, respond to supervision" and concentrate. (R. 20, 574-75). Dr. Maginn stated further that chronic anxiety and depressive symptoms compound Claimant's learning problems in trying to manage day-to-day occupational and interpersonal activities. (R. 20, 575). Additionally, Dr. Maginn completed a mental Medical Source Statement of Ability to Do Work-Related Activities wherein he described Claimant as having moderate limitations in her ability to understand and remember simple instructions, to carry out simple instructions and to make judgments on simple work-related decisions and marked limitations in her ability to interact appropriately with the public, coworkers and supervisors and in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. 50, 576-77). However, the ALJ discounted Dr. Maginn's opinion for the same reasons he discounted that of Dr. Zouev, which as discussed above, are supported by substantial evidence.

24

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained her findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 16th day of December, 2010.

Robert B. Jones, Jr.
United States Magistrate Judge

25